Marshall, C. J.
 

 This cause originated in the prohate court of Cuyahoga county, and was a proceeding to determine the inheritance tax on the estate of Henry R. Taylor, deceased. Henry R. Taylor died on December 4,1925, having his residence and domicile in the state of New Y ork. An application was filed in the probate court of Cuyahoga county on January 8,. 1927, to have the inheritance tax determined. Among the assets of the Taylor estate were certain registered bonds of Ohio municipalities. By the will of Henry R. Taylor the bonds were bequeathed to residents of the state of New York. The bonds are by their terms payable in the city of New York. The debtors are Ohio municipalities. The bonds were originally coupon bonds, but later were surrendered and registered bonds substituted. By the provisions of Section 3929, General Code of Ohio, the interest and principal of registered bonds of Ohio municipalities,' when due, shall be paid only to the person, corporation, or firm appearing by the records of the municipal corporation to be the owner thereof, or order. That statute further provides:
 

 “Such registered bonds may be transferred on such record by the owner in person or by a person authorized so to do by power of attorney duly executed.”
 

 After hearing, the probate court ruled that the registered bonds were not subject to the Ohio inheritance tax. An appeal was taken to the court of
 
 *412
 
 common pleas by j;he tax commission, and that court made the same order. Error was then prosecuted to the Court of Appeals, which affirmed the judgment of the court of common pleas. The cause has been admitted to this court upon allowance of a motion to certify the record.
 

 The sole question before this court is whether or not the succession to registered bonds issued by Ohio municipalities and owned by one who is a nonresident at the time of his death, and bequeathed by him to a nonresident, is subject to the Ohio inheritance tax. It involves an interpretation of Sections 5331 and 5332 of the General Code of Ohio. Section 5332 provides:
 

 “A tax is hereby levied upon the succession to any property passing, in trust or otherwise, to or for the use of a person, institution or corporation, in the following cases:
 

 # * *
 

 “2.
 
 "When the succession is by will or by the intestate laws of this state or another state or county, to property within this state, from a person who was not a resident of this state at the time of his death.”
 

 Section 5332 is aided by definitions found in Section 5331, as follows:
 

 “ ‘Succession’ means the passing of property in possession or enjoyment, present or future. * * * ‘Within this state,’ when predicated of tangible property, means physically located within this state; when predicated of intangible property, that the succession thereto is, for any purpose, subject to, or governed by the law of this state. ”
 

 This proceeding involving as it does the interpre
 
 *413
 
 tation of statutes imposing taxes, the court will necessarily be governed by the rule of strict interpretation. It is not necessary to elaborate upon that rule, because it has been declared by this court in the case of
 
 Cassidy
 
 v.
 
 Ellerhorst,
 
 110 Ohio St., 535, 144 N. E., 252, 42 A. L. R., 372, and the discussion will be found on pages 539, 540, and 541 of the opinion (144 N. E., 253).
 

 More specifically, it will be the task of this court to determine whether the language, “that the succession thereto is, for any purpose, subject to, or governed by the law of this state,” is broad enough to include registered bonds of Ohio municipalities.
 

 It is not contended by any one that that language would include simple contract debts, promissory notes, either with or without collateral, bonds of private corporations, or coupon bonds of municipalities. The tax commission does not ground its claims upon the power of the state over the debtor. Such a claim would result in all bonds, registered and unregistered, as well as simple contract debts, being held subject to the succession tax. If registered municipal bonds are held to be subject to the tax, it must be on the ground that the act of registration makes them “subject to, or governed by the law of this state.”
 

 In the Taylor estate are found municipal bonds, both _ registered and unregistered, and it is conceded that the unregistered bonds are not subject to the succession tax. If this court should reverse the lower courts and hold that the succession to registered bonds is subject to the tax, it would result that the succession to coupon bonds would be tax free and that the succession to other bonds of the same muni
 
 *414
 
 cipal issue, at first issued as coupon bonds, but later registered, would be subject to the tax. The sole claim of the tax commission for making a distinction is because of the provisions of Section 3929, General Code, pertaining to registration. It would result that the succession tax would be imposed rather upon the fact of registration than the taxability of the succession, a result so fraught with absurd consequences as to render it very improbable that such was the legislative intent.
 

 There are two questions for determination: First, inasmuch as the succession and not the property is subjected to tax, it becomes pertinent to inquire when the succession to registered bonds is complete; second, is the property “within this state,” as that expression is defined in Section 5331, General Code?
 

 The statute defines succession as “the passing of property in possession or enjoyment, present or future.” Apparently some distinction is made between the possession and the enjoyment. We are of the opinion that enjoyment, as used in the statute, refers to the beneficial use where the property is being held in trust. No such element being involved in the instant case, we are only charged with the duty of determining when “the passing of property in possession” is complete. Except for the fact that the executor is charged with the payment of the tax, he has no concern with the registration of the bonds after delivery to the legatee or heir at law. When the executor delivers registered bonds to the legatee or heir at law, properly indorsed, it is difficult to see how anything further is required to be done on the part of the decedent or executor to give the legatee or heir at law complete title to the
 
 *415
 
 property. The legatee or heir at law could then present the bonds with evidence of the authority of the executor to make the delivery and have the transfer made on the records of the municipality without further aid from the executor. Such delivery of the bonds places the legatee or heir at law in complete possession. The title of the legatee or heir at law is good as against all the world, though it may be necessary for his more complete security, and to guard the bonds against theft or other loss, to have them registered as provided by the statute. Registration not being compulsory, but entirely optional with bondholders, as clearly shown by the record in this case, since the bonds were first issued as coupon bonds, and later registered, it follows that the act of registration is for the sole benefit, of the owner, and that his title is not in the least impaired by his failure to avail himself of the advantages of registration. Section 3929, General Code, provides:
 

 “When due, the interest and principal of such registered bonds shall be paid only to the person, corporation or firm, appearing by the records of the municipal corporation to be the owner thereof, or order.”
 

 The peremptory language of this statute was not intended to make the mere fact of registration the controlling factor in determining title to the bonds, because a thief and forger might obtain registration in his name, though he have no title whatever. Again, an owner of a registered bond might die just prior to the maturity of the bond, so that the bend would mature before administration and distribution of the estate could be completed, in which event it would certainly not be necessary to go through the
 
 *416
 
 formality of registration before making payment to the distributee. Many other illustrations might be given to show that registration is not the controlling factor in determining title.
 

 We are not, however, so much concerned with those considerations as we are with the sole question whether the provision for registration, optional as it is with the owner in the first instance, is such character of act on the part of the municipality as renders the property “subject to or governed by the law of this state.” We are of the opinion that the act of registration does not affect the title to the property, but is merely a recognition by the municipality of the ownership by the person who owns the property in fact. We have reached the conclusion that, when the owner of a registered bond negotiates it and indorses it to a purchaser, the ownership and the legal title become immediately vested in the purchaser. The transfer upon the records of the municipality only serves to notify the municipality of the owner’s claims, and operates as a recognition by the municipality of his ownership and title for his greater security against theft or other loss. The provision that payment can only be made to the person in whose name it appears would not operate to destroy the rights of the true owner as against persons who feloniously acquired possession of the bond and obtained a transfer by means of a forged indorsement. This proposition has been declared in many jurisdictions.
 
 Scollans
 
 v.
 
 Rollins,
 
 173 Mass., 275, 53 N. E., 863, 73 Am. St. Rep., 284;
 
 Reynolds
 
 v.
 
 Title Guarantee & Trust Co.,
 
 240 N. Y., 257, 148 N. E., 514;
 
 Kelly
 
 v.
 
 Bell
 
 (Ind. App.), 83 N. E., 773;
 
 Id.,
 
 172 Ind., 590, 88 N. E., 58;
 
 *417
 

 Wyble
 
 v.
 
 McPheters,
 
 52 Ind., 393;
 
 Eames
 
 v.
 
 Wheeler,
 
 19 Pick. (Mass.), 442;
 
 Stone
 
 v.
 
 Hackett,
 
 12 Gray (Mass.), 227.
 

 It may be admitted that the Legislature was not entirely happy in its selection of language in Section 5331, in making the test whether the property is “subject to, or governed by the law of this state.” It is not easy to conjecture just what was in the legislative mind in the use of this language. Neither is it necessary to determine all the circumstances which would make intangible property belonging to a nonresident estate subject to the succession tax. It is significant, however, that it is the succession which must be governed by the law of this state, and not the property itself. Among other things, the Legislature must have had in mind ancillary administration in the state of Ohio. We have no hesitation in saying that any property belonging to a nonresident decedent, which is lawfully subject to ancillary administration in Ohio, would necessarily be subject to the succession tax. There being no ancillary administration of the Taylor estate in Ohio, and no necessity for it, that element may be eliminated from the consideration.
 

 During the course of the oral arguments, counsel for defendant in error were asked to state some hypothesis upon which intangible property belonging to the estate of a nonresident decedent would be subject to the succession tax under paragraph 2 of Section 5332, as the terms employed in that sec-' tion are defined in paragraph 3 of Section 5331, but counsel were apparently not able to state any such hypothesis. We shall not resort to speculation or conjecture to determine what was in the legislative mind, leaving all future cases calling for the inter
 
 *418
 
 pretation of these statutes to the particular facts upon which such future cases may depend. In the instant case intangible property only is involved, and the tax is upon the succession; that is to say, upon the passing of the property to the .legatee.
 

 We must not lose sight of the distinction between rights and remedies. The right to the property was complete when the bonds were delivered to the legatee. The remedy which might or might not have to be invoked might or might not include the necessity for making a transfer upon the records of the municipality.
 

 Counsel for plaintiffs in error have relied largely upon the authority of
 
 Cassidy
 
 v.
 
 Ellerhorst, supra.
 
 While the same statutes are involved, the facts are so essentially different that that case is not helpful. One of,the grounds of denying the right to tax in that case was that the obligation of the bond was not enforceable in Ohio, and it is now urged that, inasmuch as the obligation of the bond in the instant case is enforceable in Ohio, the succession must be taxable. The converse of a proposition is sometimes, but not always, true. The fact of nonenforceability in Ohio strengthened the claim of nontaxability in that case. But enforceability in Ohio in the instant case does not necessarily support the claim of taxability.
 

 For the reasons stated, the judgments of the lower courts must be affirmed.
 

 Judgment affirmed.
 

 Day, Allen, Robinson, Jones and Matthias, JJ., concur.
 

 Kinkade, J., concurs in the judgment of affirmance.